UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-81244-MATTHEWMAN

WILLIAM HERBERT BRITT,

      Plaintiff,

v.

WAL-MART STORES EAST, LP,

      Defendant.

_____/

FILED BY_____KJZ_____D.C.

Apr 14, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED MOTION IN LIMINE TO PRECLUDE THE OPINION TESTIMONY OF DR. LITA CALAGUA [DE 97]

THIS CAUSE is before the Court upon Defendant, Wal-Mart Stores East, LP's ("Defendant") Renewed Motion in Limine to Preclude the Opinion Testimony of Dr. Lita Calagua ("Motion") [DE 97]. Plaintiff, William Herbert Britt ("Plaintiff"), has filed a Response to the Motion [DE 114], and no reply was filed. The Court held a hearing on the Motion via Zoom video teleconference on March 30, 2022. The matter is now ripe for review. The Court has carefully considered the parties' written submissions, the parties' oral argument at the hearing, the record, and applicable law.

## I.     INTRODUCTION AND BACKGROUND

In his Complaint, Plaintiff alleges one count of negligence against Plaintiff. [Compl., DE 1–2]. According to Plaintiff's allegations, he slipped and fell on a liquid substance in the men's bathroom at a Wal-Mart store located in West Palm Beach, Florida, on August 15, 2019. *Id.* ¶ 7. Plaintiff also alleges that, as a direct and proximate result of Defendant's negligence, he suffered

1

"significant and severe bodily injury, resulting pain and suffering, disability, disfigurement, physical impairment, inconvenience, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money in the future and/or aggravation of a previously existing condition." *Id.* ¶ 11. According to the Complaint, these losses are "either permanent or continuing in nature." *Id.*

In his Order on Motion for Summary Judgment [DE 63], the prior presiding Judge granted in part and denied in part Defendant's Motion for Final Summary Judgment. In that Order, the Court ruled that the motion was "granted to the extent that it seeks to prohibit Plaintiff from asserting a mode of operation theory of negligence at trial in lieu of proving that Defendant had the requisite notice of the liquid substance" and denied it in all other respects.

One issue in this case is whether there was a causal connection between the slip and fall and certain cognitive issues that Plaintiff is allegedly experiencing and attributing to the fall. On April, 6, 2021, Plaintiff filed a Supplemental Expert Witness List [DE 62]. With regard to Dr. Calagua, he explained,

> Although not a retained expert, Plaintiff may call Dr. Calagua to testify. Dr. Calagua has provided care and treatment to the Plaintiff and may testify regarding [her] opinions relating to care and treatment, the costs associated with that treatment, causation of Willie Britt's injuries, damages, the need for further treatment, if any, as well as the costs for such treatment; and whether or not Mr. Britt has sustained a permanent injury within a reasonable degree of medical probability. It is anticipated that Dr. Calagua will base [her] testimony on [her] experience and training. Plaintiff will assist Defendant in obtaining dates of this witness, if requested.

*Id.*

On June 21, 2022, Plaintiff filed a Second Supplemental Expert Witness List [DE 92] which included the same language from the April 6, 2021 filing. In Plaintiff's Third Supplemental

2

Disclosures [DE 131], he listed Dr. Lita Calagua, M.D. as having knowledge of Plaintiff's injuries as a result of the subject incident and treatment thereof, the medical bills incurred by Plaintiff as a result of the subject incident, and the reasonableness of the medical bills, as well as authenticity of the medical records and bills.[1]

## II. **MOTION AND RESPONSE**

As an initial matter, the Court notes that the Motion and Response were poorly briefed. Moreover, Defendant relies on and cites to Dr. Calagua's deposition from December 18, 2020 [DE 30-1] in the body of the Motion, but then attaches Dr. Calagua's deposition from July 21, 2021 [DE 97-1] as an exhibit to the Motion. At the hearing on the Motion, Plaintiff's counsel represented to the Court that the July 21, 2021 deposition was the one that would be introduced at trial as it was apparently taken in anticipation of introducing it before the jury in lieu of Dr. Calagua's live appearance in court. Thus, Defendant's citation to the older deposition is confusing and has caused this Court to spend unnecessary time on this Motion attempting to decipher Defendant's arguments vis-à-vis the deposition testimony. Moreover, some of the issues raised in the Motion are moot since Dr. Calagua did not testify in exactly the same manner during her more recent deposition, but the parties' counsel failed to even address this fact in their papers. The Court expects better from counsel.

Dr. Lita Calagua is a neurologist who provided treatment to Plaintiff for his alleged injuries from the slip and fall on Defendant's premises. [DE 97 at 2]. According to Defendant's Motion, during her December 18, 2020 deposition, which is not the deposition being introduced at trial,

---

[1] The Court notes that Plaintiff did not mention knowledge of liability, causation, or damages as to Dr. Calagua in his most recent filing at DE 131.

Dr. Calagua admitted that (1) her evaluation of Plaintiff was based in large part on the scores Plaintiff received on cognitive testing performed at a facility called Neurocity Junction and that she was not personally involved in that testing; (2) she does not know what was done to determine the reliability of the tests upon which she relied; (3) she does not know whether, other than herself, any medical doctor or physician from Neurocity Junction ever evaluated Plaintiff; (4) she does not know of any cognitive testing performed on Plaintiff prior to his slip and fall in August of 2019, nor does she know how he would have scored on the same tests before his fall; (5) to the extent she can relate the results of the cognitive testing to the fall, it is based solely on the medical history provided by Plaintiff; (6) none of her findings relating Plaintiff's symptoms to the fall in August 2019 are objective; and (7) her review of Plaintiff's DTI MRI showed some evidence of axonal injury, but she does not know what role velocity plays in axonal injuries and only a radiologist, which she is not, could answer that question. *Id.* at 2–6.

Defendant argues that the expert opinion testimony of Dr. Calagua is not admissible under the *Daubert* standard because it is not reliable. *Id.* at 6. It also argues that, because Dr. Calagua is not a radiologist, she is not qualified to offer expert opinion testimony as to whether the DTI MRI shows evidence of an axonal injury related to Plaintiff's slip and fall in August of 2019. *Id.* Except as to the DTI MRI, Defendant does not seek to challenge Dr. Calagua's qualifications, however. *Id.* at 13.

Defendant maintains that Dr. Calagua's opinions do not have a sufficient factual predicate underlying them. *Id.* According to Defendant, Dr. Calagua has admitted that (1) she was not personally involved in Plaintiff's cognitive testing; (2) she does not know what was done to determine the reliability of the testing upon which she bases her opinions; (3) she does not know

4

whether any medical doctor or physician took part in evaluating Plaintiff; and (4) her findings relating Plaintiff's symptoms to the fall in August of 2019 are not objective. *Id.* at 13–14. Thus, according to Defendant, Dr. Calagua does not have the first-hand knowledge of the underlying examination or data to offer an opinion as to the impact the August 2019 fall had on Plaintiff's cognitive abilities that is required under *Daubert*. *Id.* at 16–17. As such, Defendant claims that her testimony should be excluded. *Id.*

In Plaintiff's Response, he argues that Dr. Calagua should be permitted to testify as to expert opinions to the extent she acquired "expert knowledge" in the course of treating Plaintiff. [DE 114 at 1]. Plaintiff further argues that Defendant deposed Dr. Calagua, and "it is only due to Wal-Mart's failure to ask the correct foundational questions during its deposition of Dr. Calagua that it challenges Dr. Calagua's opinions." *Id.* Accordingly, the Motion is premature because Plaintiff should be "permitted to lay at trial the proper foundation for Dr. Calagua's causation testimony." *Id.* Plaintiff describes in detail what foundation his counsel plans on laying at trial. *Id.* at 4. Plaintiff further contends that Dr. Calagua's causation conclusion is based on "more than mere temporal analysis." *Id.* at 5–9. Plaintiff points out that Dr. Calagua did a thorough inquiry into the onset of the injury and claims that her conclusions are based on her specific expertise and training. *Id.* at 5. Finally, Plaintiff argues that, if Dr. Calagua's opinions are based on insufficient data, then Defendant's own expert must also be excluded. *Id.* at 9–10.

### III.    RELEVANT LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party that proffers the testimony of an expert under Rule 702 bears the burden of laying the proper foundation and demonstrating admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.,*

400 F.3d 1286, 1291–92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit "has previously held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be sufficiently reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *see also Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2708498, at *2 (S.D. Fla. June 6, 2014), *aff'd on other grounds*, 664 F. App'x 874 (11th Cir. 2016); *Southpoint Condo. Ass'n v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *2–3 (S.D. Fla. July 1, 2020) (setting forth a clear and detailed summary of the law under *Daubert* and Federal Rule of Evidence 702).

The judge plays a "gatekeeping" role in determining admissibility. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). However, this gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Southpoint Condo. Ass'n,* 2020 WL 3581611, at *3 (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd*., 326 F.3d 1333, 1341 (11th Cir. 2003) (citations omitted)). A district court enjoys "considerable leeway" in making determinations regarding the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

## IV.    ANALYSIS AND RULINGS

### A.  Law Relevant to Testimony of Treating Physicians

The scenario currently before the Court is a common one in which treating physicians are

hybrid (fact and expert) witnesses. Since Dr. Calagua was not retained, she did not complete an expert report pursuant to Rule 26(a)(2)(B). However, she may potentially be entitled to testify as an expert pursuant to Rule 26(a)(2)(C)—including on the issue of causation. *Torres v. Wal-Mart Stores E., L.P.*, No. 19-62352-CIV, 2021 WL 3634632, at *10 (S.D. Fla. Aug. 17, 2021). Physicians who form their causation opinions during treatment can offer those opinions under Rule 26(a)(2)(C)—even without a Rule 26(a)(2)(B) report. *Torres*, 2021 WL 3634632, at *17 (citing *Torres v. First Transit, Inc.*, 2018 WL 3729553, at *3 (S.D. Fla. Aug. 6, 2018)). The physicians' causation opinions need only be "sufficiently related to the information disclosed during the course of Plaintiff's treatment[.]" *Torres*, 2018 WL 3729553, at *3 (quoting *Levine v. Wyeth Inc.*, 2010 WL 2612579, at *1 (M.D. Fla. June 25, 2010)); *see also Marsh v. Valyou*, 977 So.2d 543, 548 (Fla. 2007) ("Experts routinely form medical causation opinions based on their experience and training."). However, "when a treating physician's testimony is based on a[ ] hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of *Daubert*." *Pringle v. Johnson & Johnson*, No. 13-81022-CIV, 2019 WL 6723822, at *3 (S.D. Fla. Dec. 11, 2019) (footnote omitted) (quoting *Williams v. Mast Biosurgery U.S.A., Inc.*, 644 F.3d 1317-18 (11th Cir. 2011)).

Defendant has styled its Motion as a "motion in limine." In the Eleventh Circuit, motions in limine are generally disfavored as admissibility questions should be ruled upon as they arise at trial. *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013). As a result, if evidence is not clearly inadmissible, "evidentiary rulings must be deferred until trial to allow questions regarding foundation, relevancy, and prejudice." *Lordeus v. Torres*, 1:17-CV-20726-UU, 2018 WL 1364641, at *1 (S.D. Fla. Mar. 1,

2018) (quoting *Kobie v. Fifthian*, 2:12-CV-98-FTM-29DNF, 2014 WL 1652421, at \*1 (M.D. Fla. 2014)). Motions in limine are "best limited to those issues that the mere mention of which would deprive a party of a fair trial. The Court does not issue advisory opinions, and it is difficult to rule in a vacuum without having the opportunity to see the proffered testimony in perspective with other evidence in the trial." *United States v. Everglades Coll., Inc.*, No. 12-60185-CIV, 2014 WL 11578214, at \*1 (S.D. Fla. May 28, 2014); *see also Contreras v. Aventura Limousine & Transp. Serv., Inc.*, No. 13-22425-CIV, 2014 WL 11880996, at \*2 (S.D. Fla. July 29, 2014) ("It is always difficult to rule in a vacuum, so the Court's ruling is without prejudice to Defendants' objecting when the evidence is sought to be introduced."); *accord Apple, Inc. v. Corellium, LLC*, 19-cv-81160-Smith/Matthewman, 2021 WL 2712131 (S.D. Fla. July 1, 2021). However, since Defendant has raised *Daubert* issues within its Motion, and since Plaintiff apparently seeks to have Dr. Calagua testify regarding the cause of Plaintiff's medical injuries, the Court shall proceed with a *Daubert* analysis. *See Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 713 (11th Cir. 2008).

## B.  Qualifications of Dr. Calagua

Noting that Defendant does not generally object to Dr. Calagua's qualifications, the Court finds that Dr. Calagua, a neurologist, is qualified to testify competently as to certain matters in this case. Dr. Calagua, as a neurologist and Plaintiff's treating physician, is qualified to testify competently as to her opinions relating to her care and treatment of Plaintiff, the costs associated with that treatment, whether or not Plaintiff has sustained a permanent injury within a reasonable degree of medical probability based on her care and treatment of Plaintiff, damages, causation of Plaintiff's injuries which are sufficiently related to the information disclosed during the course of Plaintiff's treatment, and the need for further treatment, if any, as well as the costs for such

treatment.

Defendant does make a specific and limited argument that Dr. Calagua is not a radiologist and thus is not qualified to offer opinion testimony as whether the DTI MRI shows evidence of an axonal injury related to Plaintiff's slip and fall in August of 2019. The Court has carefully considered this argument and ultimately finds it to be without merit. The testimony of Dr. Calagua about the effect of acceleration and deceleration on axonal injuries (based upon the DTI MRI), which is cited in the Motion [DE 97 at 5] and objected to by Defendant, appears to be a non-issue as such testimony or opinion is not even present in the second operative deposition dated July 21, 2021. The acceleration and deceleration of axonal injuries only appeared in Dr. Calagua's first deposition dated December 18, 2020, which is not being introduced at trial as Plaintiff's counsel has represented that the second deposition from July 21, 2021 [DE 97-1] is the one that will be presented at trial in lieu of Dr. Calagua's live appearance.

Moreover, Dr. Calagua testified during her July 21, 2021 deposition that the "DTI is not going to make a diagnosis. The DTI only describes findings." [DE 97-1 at 30:9–10]. She also declined to testify as to whether there are any studies that address whether the DTI can determine the cause of a brain injury. [DE 97-1 at 30:21–25; 31:1–2]. There is simply no causation testimony of Dr. Calagua based upon the DTI MRI. Therefore, it appears that the limited dispute about Dr. Calagua's qualifications is moot, and the Court would have appreciated and expected counsel to have conferred on this issue and resolved it rather than requiring the Court to address a moot issue raised in the Motion.

### C.  Reliability of Dr. Calagua's Opinions

After carefully reviewing the credentials, methodology, reliability, and opinions of Dr.

Calagua, the Court finds her to be an appropriate expert on certain matters within her area of expertise. However, the Court finds that certain opinions and areas of testimony of Dr. Calagua are not underpinned by a sufficiently reliable methodology as determined after a *Daubert* inquiry. This is not a situation where Dr. Calagua can clearly base her opinion as to the causation of Plaintiff's injuries on Plaintiff's history because Plaintiff's neurological issues do not constitute "common injuries in the way they commonly occur." *Wilson*, 303 F. App'x 708 at 714 (citing *Bowers v. Norfolk S. Corp.*, 537 F. Supp. 2d 1343, 1354 (M.D. Ga. 2007)). Plaintiff's neurological issues are more complex than his alleged spinal issues and are more similar to the more nuanced and uncommon type of Taser-related injuries at issue in *Wilson, supra*. Moreover, according to the deposition testimony of Dr. Calagua, Plaintiff complained of headaches many times to many different health care providers in the years prior to his alleged slip and fall at issue in this case.

Specifically, after carefully considering the record in this case in light of the applicable case law, the Court addresses the following opinions of Dr. Calagua and states whether they do or do not pass muster under a *Daubert* analysis.

1.  Permissible Opinions

Dr. Calagua, as a neurologist and Plaintiff's treating physician, shall be permitted to testify as to Plaintiff's subjective complaints he relayed to her, what her personal examination of Plaintiff uncovered, Plaintiff's alleged injuries, Plaintiff's first brain MRI which she reviewed and discussed with Plaintiff, Plaintiff's DTI MRI which she reviewed and discussed with Plaintiff, her medical bills pertaining to Plaintiff, and the fact that she referred Plaintiff for cognitive therapy. She can also testify about causation to the extent that she bases her causation opinion solely on these subject matters which arose in her role as Plaintiff's treating physician.

2.   Impermissible Opinions

Here, as in *Wilson*, Dr. Calagua admittedly relied upon certain tests and therapy completed by others at Neurocity Junction, and she also relied on records from Dr. Diego Rielo in reaching her conclusion regarding causation, but she offered no basis for her colleagues' conclusions. [DE 97-1 at 49:18-52:11]. This falls outside her role as a treating physician. Dr. Calagua cannot simply regurgitate these test results and cognitive therapy from Neurocity Junction and/or Dr. Rielo when she has also testified that the services provided at Neurocity Junction have nothing to do with her practice [DE 97-1 at 33:1–2], she does not have access to the names of the therapists who provided the cognitive therapy [DE 97-1 at 49:5-50: 3], she does not know when Dr. Huseboe designed the cognitive tests [DE 97-1 at 51:2–7], she cannot provide the methodology to confirm the tests are reliable [DE 97-1 at 52:4–11], the results of the cognitive therapy have nothing to do with her examination [DE 97-1 at 52:12–25; 53:1–6], and she does not have personal knowledge of Plaintiff's visits with Dr. Rielo [DE 97-1 at 55:1–8]. Nothing in the record indicates that the tests and cognitive therapy performed by Neurocity Junction and/or Dr. Rielo are reliable, or that the individuals who conducted the cognitive therapy or tests relied upon sufficient facts and applied a reliable methodology in reaching their results, opinions and conclusions. The Court will therefore not permit Dr. Calagua to rely upon the cognitive therapy or tests conducted by Neurocity Junction and Dr. Rielo in rendering any opinions or testimony in this case.

Expert opinion testimony is properly excluded as unreliable if the doctor "engaged in very few standard diagnostic techniques by which doctors normally rule out alternative causes and the doctor offered no good explanation as to why his or her conclusion remained reliable" or if "the

defendants pointed to some likely cause of the plaintiff's illness other than the defendants' action and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness." *Wilson*, 303 F. App'x at 714 (quoting *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1358 (N.D. Ga. 1999)).

Based on the foregoing, Dr. Calagua cannot testify regarding the cognitive tests and therapy conducted by others at Neurocity Junction, including Dr. Rielo, or any findings or results of the therapy or tests. Additionally, to the extent Dr. Calagua based her causation opinion on the tests and therapy conducted by these therapists, physicians, and other medical personnel, such testimony or opinion of Dr. Calagua shall not be admitted. Dr. Calagua is required to base her testimony and opinions on her care and treatment of the Plaintiff in her role as his treating neurologist, as specified above.

### D.  Whether the Testimony Will Assist the Trier of Fact

As Plaintiff's treating physician, and as a neurologist, Dr. Calagua's testimony, as limited above, will undisputedly assist the trier of fact through the application of her expertise to understand the evidence or determine a fact in issue.

### V.  CONCLUSION

In light of the foregoing, the Court finds that Plaintiff has demonstrated the admissibility of certain of Dr. Calagua's opinions and testimony by a preponderance of the evidence, except as noted above. The jury will hear from Dr. Calagua as to the permissible areas noted above and make its own findings.

It is hereby **ORDERED AND ADJUDGED** that Defendant's Renewed Motion in Limine to Preclude the Opinion Testimony of Dr. Lita Calagua [DE 97] is **GRANTED IN PART AND**

**DENIED IN PART**, as further explained above. Since the Motion was styled as a motion in limine, the Court's rulings are made without prejudice and may be revisited by the Court during trial in the event a proper and timely objection is made for the Court's consideration.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of April, 2022.

WILLIAM MATTHEWMAN
United States Magistrate Judge